**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James E. MELVIN, Defendant–Appellant.**

**No. 95–10150.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 10, 1996.

Decided July 31, 1996.

Douglass A. Mitchell, Dickerson, Dickerson, Lieberman & Consul, Las Vegas, Nevada, for defendant-appellant.

John E. Ham, Assistant United States Attorney, Las Vegas, Nevada, for plaintiff-appellee.

Before: HUG, Jr., Chief Judge, D.W. NELSON, and FERNANDEZ, Circuit Judges.

HUG, Chief Judge:

James Edward Melvin appeals his convictions and sentence for racketeering conspiracy in violation of 18 U.S.C. § 1962(d), racketeering in violation of 18 U.S.C. § 1962(c), mail fraud in violation of 18 U.S.C. § 1341, and aiding and abetting in violation of 18 U.S.C. § 2. On appeal, Melvin contends that: (1) postal inspectors interrogated him without giving him *Miranda* warnings; (2) the district court improperly admitted prejudicial evidence of uncharged conduct; (3) the jury was not given his requested jury instruction; (4) the court improperly excluded exculpatory testimony; (5) his convictions should be reversed for insufficiency of the evidence; (6) the court erroneously gave him a two-point enhancement for being an organizer; (7) the amount of loss attributable to him was miscalculated; and (8) the court erred in its denial of a sentence reduction for acceptance of responsibility. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Melvin participated in an enterprise which preyed upon thousands of victims nationwide through ads for fraudulent get-rich-quick schemes. For almost five years, the conspiracy, organized by Fieler Enterprises, oversaw some 80 schemes which took money from the financially unsophisticated in exchange for useless or illegal information. Each scheme was operated under a different name, with the profits going to different bank accounts. Each took the form of a direct mailing or advertisement published in a newsletter produced by Fieler Enterprises. The schemes are estimated to have earned the group over $15 million. Melvin was responsible for devising at least three schemes. He assisted in carrying out several others.[1]

## I. *MIRANDA* CLAIM

Melvin claims that statements he made to postal inspectors which were used to

---

1. Melvin and co-defendant Fonda Snyder were the only two members of the Fieler group who did not plead guilty. Snyder was convicted and appealed to this court. We affirmed her convictions in an unpublished disposition.

incriminate him at trial, should have been excluded because they were obtained during a custodial interrogation during which he was not given *Miranda* warnings. An individual is deemed in custody, and thus entitled to a *Miranda* warning if, "under the circumstances, a reasonable person would believe that he is not free to leave." *United States v. Gillyard,* 726 F.2d 1426, 1429 (9th Cir. 1984). This is a factual determination, made on a case-by-case basis. *United States v. Crisco,* 725 F.2d 1228, 1230 (9th Cir.1984), *cert. denied,* 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 832. The district court's findings of fact are reviewed for clear error. *Id.* at 1230.

There was a conflict at trial between Melvin's version of the interrogation, and that of Postal Inspector Carillo. Melvin testified that he was detained in an office by two inspectors who showed him badges and a weapon, threatened him with "problems" if he did not cooperate, told him he did not need an attorney when he requested one, and offered him immunity for his statements.

Inspector Carillo testified quite differently, stating that Melvin came willingly to three separate interviews and voluntarily produced a "Classified Document" in which he detailed the activities of every participant in the Fieler Conspiracy except himself. The district court considered the conflicting accounts and found Melvin's testimony "patently unbelievable." The court stated that, "if that first meeting was as threatening as he suggested it was, I can't conceive someone returning or at least not insisting that counsel be present."

"[C]redibility determinations are insulated from appellate review." *Jordan v. Clark,* 847 F.2d 1368, 1375 (9th Cir.1988) (citations omitted), *cert. denied sub nom. Jordan v. Hodel,* 488 U.S. 1006, 109 S.Ct. 786, 102 L.Ed.2d 778 (1989). We give wide deference to the trial judge's determination that Inspector Carillo's version of the interviews was the more credible. *See Anderson v. City of Bessemer City,* 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). Because the district

court could properly find that a reasonable person would not have believed he was in custody and that Carillo's testimony was simply more credible, we uphold its determination that Melvin was not questioned improperly. *See Crisco,* 725 F.2d at 1230.

## II. THE EVIDENCE OF UNCHARGED CONDUCT

■ Melvin claims that while his indictment charged him with participating in only three of the Fieler Enterprise schemes, the Government nevertheless introduced evidence of other uncharged schemes against him at trial. This included evidence relating to Melvin's own JEM Corporation, as well as other Fieler Enterprise schemes not listed on the indictment. The district court's decision to admit evidence of other crimes or bad acts under Fed.R.Evid. 404(b) is reviewed for abuse of discretion. *United States v. Houser,* 929 F.2d 1369, 1373 (9th Cir.1990).

■ Melvin claims that evidence relating to JEM Corporation should have been excluded because the business was never proven to be fraudulent. However, if this scheme was indeed legitimate, he cannot assert that it prejudiced the jury, or that it was inadmissible evidence of other bad acts.[2] He argues that evidence of the JEM scheme and of the other uncharged schemes does not satisfy the four-part test for admissibility as laid out in *Houser,* 929 F.2d at 1373.

■ Rule 404(b) allows for the admission of evidence of other crimes, wrongs, or acts to prove motive, intent, preparation, or plan even though it is inadmissible to prove character. Fed.R.Evid. 404(b). Evidence of acts admitted pursuant to Rule 404(b) must still meet a four-part test. Such evidence must: (1) be based on sufficient evidence; (2) be not too remote in time from charged crimes; (3) bear some similarity to charged acts; and (4) prove an essential element of the charged offense. *Houser,* 929 F.2d at 1373; *United States v. Bibo–Rodriguez,* 922 F.2d 1398,

---

2. Melvin himself introduced the evidence relating to the JEM scheme, in order to highlight its legitimacy as compared to the Fieler schemes. After introducing this evidence to the jury for his own purposes, Melvin cannot contend on appeal that it was impermissible for the Government to use it to show his method and intent.

1400 (9th Cir.), *cert. denied,* 501 U.S. 1234, 111 S.Ct. 2861, 115 L.Ed.2d 1028 (1991).

■ The evidence in question related to a Fieler Enterprises ad for the George Davis scheme which was a compilation of several other fraudulent schemes, most of which are referred to in Melvin's indictment. The ad proved that Melvin intended to forward the larger conspiracy, and shows intent, motive, and method of operation. Applying the *Houser* test, we conclude that there was sufficient proof of the other schemes because Melvin's co-conspirators had already pled guilty to them. The other schemes were not too remote, because they were taking place at the same time, and executed in a similar manner to the charged schemes. The uncharged schemes were similar in nature to the get-rich-quick schemes for which Melvin was charged. Finally, these other schemes were admitted to show intent, motive, and method of operation of the conspiracy. We therefore find the evidence admissible under Rule 404(b).

■ Finally, *Houser* requires that the probative value of the evidence outweigh its prejudicial effect under Fed.R.Evid. 403. 929 F.2d at 1373. As noted above, the evidence clearly showed Melvin's intent, method, and plan. The fact that his schemes were referenced in another Fieler ad shows that he was closely involved with the larger conspiracy. The prejudicial effect of this added evidence was outweighed in this case by its probative value. *Id.* at 1373. The evidence was properly admitted.

■ Melvin contends that even if the evidence were properly admitted under Rule 404(b), the district court nevertheless committed plain error in not, *sua sponte,* giving the jury a limiting instruction and a specific unanimity instruction with respect to uncharged schemes. When there is no objection to a jury instruction at the time of trial, this court reviews for plain error. *United States v. Ponce,* 51 F.3d 820, 830 (9th Cir. 1995). Plain error is a highly prejudicial error affecting substantial rights. *United States v. Payne,* 944 F.2d 1458, 1463 (9th Cir.), *cert. denied,* 503 U.S. 975, 112 S.Ct. 1598, 118 L.Ed.2d 313 (1992).

Melvin relies on *United States v. Echeverry,* 698 F.2d 375 (9th Cir.1983), *modified* 719 F.2d 974 (9th Cir.1983), for the proposition that when there is a genuine possibility of jury confusion, a general unanimity instruction is insufficient. He contends that a specific unanimity instruction was required to ensure that jurors were not convicting him for schemes not in the indictment. In *Echeverry,* the jury's written questions indicated their confusion as to multiple conspiracies. *Id.* at 975. Melvin's jury did not submit questions indicating confusion as to the multiple schemes.

The schemes in this case were distinctly named and thus easily classified. In the main, the only schemes discussed in detail were the five substantive schemes in the indictment. Evidence of uncharged schemes was introduced to show Melvin's involvement, but the jurors were expressly told that Melvin needed to be found guilty of the substantive counts in order to be convicted of the racketeering and racketeering conspiracy counts. Thus, there is no evidence of an ambiguous instruction which could lead to juror confusion, nor is there evidence of any actual juror confusion. We therefore find no manifest injustice that would suggest plain error. The instructions given were sufficient.

## III. THE INNOCENT EXPLANATION JURY INSTRUCTION

■ Melvin also argues that the district court erred by refusing to instruct the jury on his theory of the case. Specifically, he and co-defendant Fonda Snyder requested an instruction advising the jury that if an innocent explanation existed for their conduct, their guilt must be proven beyond a reasonable doubt. We review *de novo* whether jury instructions adequately covered the defense's theory. *United States v. Duran,* 59 F.3d 938, 941 (9th Cir.), *cert. denied* — U.S. ——, 116 S.Ct. 535, 133 L.Ed.2d 440 (1995).

Melvin requested the following jury instruction:

When there is an innocent explanation for a defendant's conduct as well as one

which suggests that the defendant was engaged in wrongdoing, the Government must produce evidence which would allow you, the jury, to conclude beyond a reasonable doubt that the Government's version of the defendant's conduct is the correct one.

The trial court gave the following instruction to the jury:

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. You must find that there was a plan to commit at least one of the crimes alleged in the indictment as an object of the conspiracy.

On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator. . . .

It also gave the following instruction:

It is not enough that the defendant merely associated with a person or persons who committed the crimes, or was present at the scene of the crime, or unknowingly or unintentionally did things that were helpful to the principle. The evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping another person or persons commit mail fraud or money laundering.

"[A] criminal defendant is entitled to have a jury instruction on any legal defense to the charge against him which has some foundation in the evidence." *United States v. Chen*, 933 F.2d 793, 796 (9th Cir.1991) (citation omitted). However, "[s]o long as the instructions fairly and adequately cover the issues presented, the judge's formulation of those instructions or choice of language is a matter of discretion." *Id.* at 796 (citations and quotation marks omitted).

Melvin's requested instruction was not necessary because the instructions given adequately covered his theory of the case. Melvin's instruction requires that the Government prove beyond a reasonable doubt the requisite elements of the crime such that another, innocent explanation could not be found. This was the Government's burden from the outset. Had the jury believed that an innocent explanation existed for Melvin's conduct, they could not have convicted him following the instructions as given. *See Chen*, 933 F.2d at 796 (holding that jury instruction was adequate because "if followed by the jury, [it] was sufficient to preclude a conviction if the jury believed" defendant's theory of the case). Thus, the jury instructions were sufficient.[3]

## IV. EXCLUSION OF EXCULPATORY TESTIMONY

Melvin contends that the trial court erroneously refused to allow his co-defendant Fonda Snyder's attorney, Kenneth Cory, to testify concerning exculpatory statements made by David Fieler. Fieler had allegedly talked to Cory about the core members of the conspiracy, and had not, at the time, mentioned Melvin's name. The court excluded the testimony as hearsay. A district court's evidentiary rulings are reviewed for an abuse of discretion. *United States v. Manning*, 56 F.3d 1188, 1196 (9th Cir.1995).

Melvin contends that the statement was not hearsay. He relies on Fed. R. Ev. 801(d)(1)(A). This rule states that:

[a] statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition.

The court found Fieler's statement to be not inconsistent with his testimony at trial, and

---

**3.** Moreover, in *United States v. Snyder*, No. 94–10598, 1995 WL 726562 (9th Cir. Dec. 6, 1995) (unpublished disposition), we upheld the district court's refusal to give the innocent explanation instruction. This was the appeal of the code- fendant, who was tried with Melvin. Thus, that determination is the law of this case. *See United States v. Schaff*, 948 F.2d 501, 506 (9th Cir. 1991).

that Fieler's statements to Cory were not made under oath as required by the rule. Because there was no prior inconsistent testimony,[4] and no statement under oath, Cory's testimony was properly deemed hearsay.

Melvin contends that the testimony should nevertheless have been allowed under the residual exceptions of Fed.R.Evid. 804(b)(5) and 803(24). This claim is without merit. Rule 804 requires that the declarant be unavailable. Yet the declarant, Fieler, testified at Melvin's trial. Rule 803(24)(C) requires that a statement not covered by any enumerated exceptions to the hearsay rule, but having nevertheless equivalent guarantees of trustworthiness may be admitted if the interests of justice would be best served by its admission. With respect to Cory's testimony, there were no equivalent circumstantial guarantees of trustworthiness as required by the rule. Because the interests of justice would not be aided by the inclusion of this hearsay testimony, Cory's statements were properly barred.

## V. INSUFFICIENCY OF THE EVIDENCE

Melvin contends that the Government failed to establish that he knowingly agreed to participate in the conspiracy to defraud the consumers of Fieler Enterprises' schemes. Sufficient evidence exists to support a conviction if, reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the substantial elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Vgeri,* 51 F.3d 876, 879 (9th Cir.1995).

To be convicted of a conspiracy, the Government must prove that the defendant both knew of the conspiracy and acted in furtherance of it. *United States v. Cloughessy,* 572 F.2d 190, 191 (9th Cir.1977). "Once a conspiracy exists, evidence establishing beyond a reasonable doubt defendant's connection with the conspiracy, even though the

connection is slight, is sufficient to convict defendant of knowing participation in the conspiracy." *United States v. Bautista–Avila,* 6 F.3d 1360, 1362 (9th Cir.1993) (citations and quotation marks omitted).

Here, the evidence shows that Melvin clearly had knowledge of the details of the conspiracy. He worked closely with Fieler and other members of the Fieler team for some time, creating new schemes and improving existing ones. He performed many substantial and unequivocal tasks for the Enterprise, and was in fact so well versed in the workings of the conspiracy that he was able to produce a classified document for the Postal Inspectors, detailing the activities and duties of each member of the conspiracy and the details of each scheme. *See United States v. Cuevas,* 847 F.2d 1417, 1425 (9th Cir.1988) (holding that intimate familiarity with the conspiracy was sufficient for conviction of conspiracy), *cert. denied,* 489 U.S. 1012, 109 S.Ct. 1122, 103 L.Ed.2d 185 (1989).

While Melvin clearly knew of the conspiracy, the Government nevertheless needed to show that he worked to further it. "Mere casual association with conspiring people is not enough." *Cloughessy,* 572 F.2d at 191. Melvin worked closely with Fieler to develop new schemes, supervised others in direct mailings for his schemes, used the names of his own friends in the false testimonials, and admitted to forging signatures on the ads. This constitutes not only sufficient but ample evidence that he worked to further the conspiracy.

## VI. TWO–POINT ENHANCEMENT FOR ROLE AS AN ORGANIZER

Melvin contends that the district court improperly increased his base offense level by two points as an "organizer, leader, manager, or supervisor" of the conspiracy pursuant to the United States Sentencing Guidelines § 3B1.1(c). Melvin received a two-point upward enhancement to his base offense level because the district court found

---

**4.** In fact, Fieler testified quite consistently on cross examination that Melvin was not a core member of the enterprise.

that Melvin supervised his girlfriend and several men hired from a local shelter in the production of a mailing for one of the charged schemes.

Melvin argues that while the men from the shelter and his ex-girlfriend did assist in a mailing for the Lauren Taylor scheme, they were not "participants" within the meaning of section 3B1.1.[5] Melvin relies on *United States v. Anderson,* 942 F.2d 606, 615 (9th Cir.1991) (en banc), to argue that an enhancement under section 3B1.1(c) is inappropriate absent a finding that the people supervised by the defendant were themselves criminally responsible. *Anderson* is distinguishable, however, in that the parties in that case had stipulated that the getaway driver was not criminally responsible. 942 F.2d at 607.

Melvin, on the other hand, supervised his former girlfriend, Tanya Carter, as she in turn organized the dipping of Christmas cards into coffee, in order to make them look genuine. Carter was aware that the scheme was fictitious. She knew that the names and signatures on the ads were fraudulent. She testified that she opened a bank account in her own name into which Melvin deposited the profits of the George Davis scheme. Because Carter was criminally responsible, Melvin's enhancement for supervising her was appropriate. *See* Application Note 2 to the Commentary of § 3B1.1 (to qualify for the enhancement, supervision of one other participant is sufficient).

## VII. AMOUNT OF LOSS ATTRIBUTABLE TO MELVIN

Melvin contends that the district court failed to make factual findings concerning the amount of loss attributable to him as required by the Sentencing Guidelines. He also argues that in adopting the Presentence Report's calculation of the amount of loss attributable to him, the court improperly considered sums acquired by Fieler Enterprises both before and after he had entered the conspiracy.

■ Melvin argues that the court failed to make express factual findings as to the relevant sentencing factors. The district court estimated the amounts of the losses based on bank account deposits for each scheme with which Melvin was involved. These amounts were documented in the Presentence Report. The claim that the district court was required to make express factual findings beyond the evidence documented in the Presentence Report is without merit. The findings are adequate.

Melvin further argues that holding him responsible for the total amount of loss for each of the five schemes with which he was involved was impermissible. He claims that many of these schemes were in operation prior to his entry into Fieler Enterprises, and that they continued to amass money after he had left the organization. The Sentencing Guidelines state that Melvin is responsible for, "all reasonably foreseeable acts and omissions ... in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3 (a)(1)(B). This requires a determination of the scope of the criminal activity Melvin agreed to undertake. *See* Application Note 2 to § 1B1.3.

■ Evidence given at trial proved that Melvin was involved in the creation of ads for each of the schemes used in the calculation. Profits from all of these schemes were thus reasonably foreseeable. There was substantial evidence that the schemes and ads, and therefore the resulting losses from the charged schemes, began with Melvin.

■ Melvin's argument that he should not be held responsible for money accrued by the group after his association with Fieler had terminated is meritless. The contention that he stopped being a member of Fieler Enterprises in 1989, requires a showing that he acted affirmatively to defeat or disavow the purpose of the conspiracy. *See Reisman*

---

**5.** Application Note 1 to the commentary section of § 3B1.1 provides:

  1. A "participant" is a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense (*e.g.,* an undercover law enforcement officer) is not a participant.

*v. United States,* 409 F.2d 789, 792–93 (9th Cir.1969). Being fired does not constitute disavowing the purposes of the conspiracy. While it is true that he was no longer welcome at Fieler Enterprises after 1989, he made no effort to report, or undo the damage from the schemes he had helped set in motion. The losses from these schemes were reasonably foreseeable, and thus properly included in the calculation.

## VIII. SENTENCE REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY

■ Whether a defendant has accepted responsibility is a finding of fact reviewed for clear error. *United States v. Gonzalez,* 897 F.2d 1018, 1019 (9th Cir.1990). Due to the sentencing judge's unique position in evaluating a defendant's acceptance of responsibility, "the determination of the sentencing judge is entitled to great deference and should not be disturbed on review unless without foundation." U.S.S.G. § 3E1.1, Application Note 5.

■ Melvin claims that he was entitled to a downward adjustment for acceptance of responsibility because he assisted the postal inspectors in their investigation and provided them with his "Classified Document." The Classified Document implicated only his co-conspirators without mentioning his own role in the conspiracy. He has not admitted his guilt, and in fact still maintains that he is innocent. He put the Government to the burden and expense of a trial. The departure was properly denied. In denying Melvin's request for a downward adjustment for acceptance of responsibility, the court was not refusing to recognize that he assisted in the investigation. It was exercising its judgment that Melvin's accusations against the other members of the conspiracy did not rise to the level of "a recognition and affirmative acceptance of personal responsibility for his wrongdoing." U.S.S.G. § 3E1.1.

**AFFIRMED.**