116 F.3d 1486
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Suarawu ADEWUSI, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Nelson Afolabi KAMSON, Defendant-Appellant.
 Nos. 95-50504, 95-50507.
 United States Court of Appeals, Ninth Circuit.
 June 25, 1997.
 
 Appeal from the United States District Court for the Central District of California, Nos. CR-95-00372-LEW, CR-95-00372-LEW-02; Laughlin E. Waters, District Judge, Presiding.
 Before: SKOPIL, PREGERSON, and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Nelson Afolabi Kamson appeals his convictions for violations of 18 U.S.C. §§ 371, 1029(a)(1), 1029(a)(4). Kamson also appeals his sentence of 110 months imprisonment and his partial restitution order. Suarawu Adewusi appeals his conviction for violation of 18 U.S.C. § 371. Adewusi also appeals his sentence of 51 months imprisonment and his partial restitution order.
 
 
 3
 We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 3231. We affirm.
 
 
 4
 I. Evidence of Rosenthal's Involvement with his Stepfather's Murder, and Ex Parte Communications
 
 
 5
 A. Evidence of Rosenthal's Involvement with his Stepfather's Murder
 
 
 6
 Appellants' challenge the district court's ruling that excluded evidence of Rosenthal's involvement with the murder of his stepfather ("Rosenthal murder evidence"). We review the evidentiary rulings of the district court for abuse of discretion. United States v. Carpenter, 95 F.3d 773, 775 (9th Cir.1996), cert. denied, 117 S.Ct. 1094 (1997). The district court did not abuse its discretion in excluding the Rosenthal murder evidence because it was not relevant.
 
 
 7
 The Rosenthal murder evidence was not admissible to show the character and conduct of Rosenthal because it did not involve a conviction, and it was not probative of Rosenthal's truthfulness or untruthfulness. Fed.R.Evid. 608(b). Consiglio argued that the Rosenthal murder evidence included episodes where a young Rosenthal lied to the District Attorney. Even if such evidence demonstrated Rosenthal's lack of truthfulness, however, it would be cumulative because Rosenthal readily admitted--before the jury--to having an untruthful character. The jury therefore possessed " 'sufficient information upon which to make a discriminating appraisal of the subject matter at issue.' " United States v. Reese, 2 F.3d 870, 892 (9th Cir.1993) (quoting United States v. Brown, 936 F.2d 1042, 1049 (9th Cir.1991)), cert. denied, 510 U.S. 1094 (1994).
 
 
 8
 The Rosenthal murder evidence had no probative value to impeach Rosenthal about his testimony of his age. Rosenthal truthfully testified that in 1983 he was seventeen years old.
 
 
 9
 Appellants argue that the Rosenthal murder evidence was relevant to impeach Rosenthal because he lied about committing other crimes in high school. Rosenthal, however, answered truthfully on this issue: he was "not involved in any other crimes in high school." Rosenthal's stepfather was murdered in March 1981. Close scrutiny of the Government's sealed records reveal that Rosenthal was in junior high in August 1980, still in junior high in January 1981, and was "scheduled for [Northview High School] on 4-22-81, however had never shown up for any classes."
 
 
 10
 While Appellants were given opportunities to submit documentation showing that Rosenthal was in high school at the time of the murder, they never presented any evidence to this effect. Because Rosenthal was not in high school at the time of the murder he gave a truthful answer when questioned about other crimes in high school. The Rosenthal murder evidence was therefore not relevant to impeach Rosenthal.
 
 B. Ex Parte Communications
 
 11
 Appellants contest the district court's reliance on evidence filed in camera in an ex parte hearing, to rule on the admissibility of the Rosenthal murder evidence. We review for abuse of discretion a district court's reliance on ex parte communications to resolve a pending motion. United States v. Thompson, 827 F.2d 1254, 1257 (9th Cir.1987).
 
 
 12
 "Absent ... compelling justification, ex parte proceedings are anathema in our system of justice and, in the context of a criminal trial, may amount to a denial of due process." Id. at 1258-59. In its brief the Government admits that its decision to submit two sets of documents in camera was improper. We do not condone this procedure and agree with the Government that its actions were improper. Nonetheless, we must still apply the harmless error analysis to the erroneous use of an ex parte hearing. Id. at 1261 (analyzing district court's erroneous use of an ex parte hearing under the harmless error test). In the present case, the district court's reliance on evidence submitted in an ex parte hearing was harmless error.
 
 
 13
 As discussed above, the Rosenthal murder evidence was not relevant. Therefore, even had defense counsel been present during the hearing, the Rosenthal murder evidence would have still had no relevance to any defense. Accordingly, while we view the ex parte hearing held in the district court with extreme suspicion, Appellants have failed to demonstrate how they could have effectively rebutted the evidence presented in the hearing and impeached Rosenthal. The error was therefore harmless.
 
 II. Sufficiency of the Evidence
 
 14
 Kamson challenges the sufficiency of the evidence to support his convictions for conspiracy, in violation of 18 U.S.C. § 371, trafficking in counterfeit access devices, in violation of 18 U.S.C. § 1029(a)(1), and possessing device-making equipment, in violation of 18 U.S.C. § 1029(a)(4). Adewusi challenges the sufficiency of evidence to support his conviction for conspiracy, in violation of 18 U.S.C. § 371. In reviewing the sufficiency of evidence to support a conviction, we view the evidence in the light most favorable to the prosecution and ask if any rational trier of fact could have found the substantial elements of the crime beyond a reasonable doubt. United States v. Melvin, 91 F.3d 1218, 1225 (9th Cir.1996). PH1H A. Conspiracy Convictions
 
 
 15
 To establish the crime of conspiracy the Government must show: "(1) an agreement to accomplish an illegal objective; (2) one or more overt acts in furtherance of the illegal objective; and (3) the intent to commit the underlying substantive crime." United States v. Ray, 930 F.2d 1368, 1371 (9th Cir.1990), as amended Apr. 23, 1991, cert. denied, 498 U.S. 1124 (1991). " 'The agreement need not be explicit, but may be inferred from circumstantial evidence.' " United States v. Hubbard, 96 F.3d 1223, 1226 (9th Cir.1996) (quoting United States v. Melchor-Lopez, 627 F.2d 886, 891 (9th Cir.1980)).
 
 
 16
 There was sufficient evidence from which a rational jury could have inferred an agreement to commit fraud between Kamson, Idris, and Adewusi. Viewing the evidence in the light most favorable to the Government, Rosenthal's testimony established that at one time Kamson had at least a dozen people working for him who were involved in credit card fraud. On the day of the arrest Kamson and Idris exchanged cash for credit card numbers, and Idris was later arrested in possession of seven $100 bills. While in the hotel room both Idris and Adewusi helped Rosenthal and Kamson set up devices used to produce counterfeit cards. These facts demonstrate an agreement to commit credit card fraud between Kamson, Adewusi, and Idris.
 
 
 17
 "Once a conspiracy exists, evidence establishing beyond a reasonable doubt defendant's connection with the conspiracy, even though the connection is slight, is sufficient to convict defendant of knowing participation in the conspiracy." Melvin, 91 F.3d at 1225. Adewusi's "mere proximity" to the hotel where the cards were counterfeited "is insufficient to establish involvement in a conspiracy, [but his mere] presence may support that inference when viewed in light of other evidence." Ray, 930 F.2d at 1371. There was ample "other evidence" from which a rational jury could find that Adewusi had more than a slight connection to the conspiracy. Adewusi drove Kamson to the El Segundo Inn, entered the hotel room in which the embosser, encoder, and tipper were in plain view, and Adewusi stayed in the room while this loud machinery was being used. While in the hotel room, Rosenthal and Adewusi discussed the relative difficulty of committing credit card fraud in Japan, Los Angeles and other parts of the United States. Adewusi moved a piece of furniture in the hotel room to allow Rosenthal to plug in an encoder. Adewusi was later arrested with four "marked" $100 bills given to Rosenthal by the Secret Service, presumably by Rosenthal to Kamson, and then by Kamson to Adewusi. This evidence was sufficient for a rational jury to conclude that Adewusi was connected with the conspiracy, and that his connection with the conspiracy was more than the "slight connection" required for conviction. Melvin, 91 F.3d at 1225.
 
 
 18
 Additional evidence demonstrates Kamson's connection to the conspiracy. In two separate conversations taped by Secret Service agents, Kamson agreed to produce ten counterfeit credit cards. Kamson was also arrested with $600 in bills whose serial numbers matched those given by Sierze to Rosenthal before the sting. Rosenthal testified that Kamson made and encoded counterfeit credit cards in the hotel room. This evidence is sufficient to support Kamson's conspiracy conviction.
 
 B. Kamson's Other Convictions
 
 19
 The evidence discussed above that establishes a conspiracy also demonstrates that Kamson had control of and trafficked in counterfeit access devices. Kamson agreed to produce counterfeit cards for Rosenthal in a conversation taped and monitored by the Secret Service. A California identification card found in luggage seized in the hotel room bore the name of Theodore Perry Radcliff, and it featured a photograph of Kamson. In the same luggage Secret Service agents found an embossing machine. Agents also discovered a tipping machine and an encoding machine in the luggage found in the hotel room. Fifteen hundred sheets of biographical information were also found in the luggage, containing six thousand names and over six thousand credit card numbers. This constitutes sufficient evidence to support both of Kamson's additional convictions for controlling and trafficking in counterfeit access devices.
 
 
 20
 III. Evidence of Kamson's Prior Arrests for Credit Card Fraud
 
 
 21
 Kamson challenges the district court's refusal to strike Sierze's re-direct testimony that revealed Kamson's prior arrests. The district court had excluded evidence of Kamson's prior acts of credit card fraud in an earlier in limine motion.
 
 
 22
 When Sierze took the stand, Kamson's attorney aggressively questioned him regarding the research undertaken before the agent began the sting operation. The point of this line of questioning was that Sierze initiated the sting operation based on no more than the bare allegations of an unreliable Government informant. In the context of this questioning, it was not an abuse of discretion for the district court to admit evidence of Kamson's prior arrests for credit card fraud. See United States v. Wales, 977 F.2d 1323, 1326 (9th Cir.1992) (holding that defense counsel "opened the door" to testimony about false driver's licenses when counsel solicited contrary information on cross-examination).
 
 IV. Juror Misconduct
 
 23
 Kamson argues that the district court abused its discretion when it refused to declare a mistrial because Juror Stroukal communicated with Government counsel in court and admitted to discussing the case with other jurors before the case was given to the jury. The district court held an evidentiary hearing on Stroukal's conduct. In reviewing this hearing, this court focuses on "determining whether the [d]istrict [c]ourt, in view of all the circumstances, so abused its discretion that [the defendant] must be deemed to have been deprived of his Fifth Amendment due-process or Sixth Amendment impartial-jury guarantees." United States v. Soulard, 730 F.2d 1292, 1305 (9th Cir.1984).
 
 
 24
 Stroukal's actions were "ex parte contacts:" "improper contact, but not the introduction of new information." United States v. Maree, 934 F.2d 196, 202 (9th Cir.1991) (citations omitted). This court has held that "[w]here ex parte contacts are involved, the defendant will receive a new trial only if the court finds 'actual prejudice' to the defendant." Id. at 201 (emphasis added) (citation omitted). The defendants must show that the "misconduct has prejudiced [them] to the extent that [they have] not received a fair trial." United States v. Armstrong, 909 F.2d 1238, 1244 (9th Cir.) (internal quotations and citation omitted), cert. denied, 498 U.S. 870 (1990).
 
 
 25
 Appellants have not shown how the improper contacts caused actual prejudice. Stroukal arguably questioned a Government witness by snickering during Rosenthal's testimony. Stroukal also arguably questioned Government evidence when she asked why the Government did not enhance the tapes. Stroukal did not cause actual prejudice to Appellants by mouthing "good job" to Government counsel. See id. at 1240, 1244 (upholding conviction when juror shouted, "he's guilty" after prosecutor's opening argument). The district court accordingly did not abuse its discretion when it concluded that Stroukal's misconduct did not deprive Appellants of a fair trial.
 
 V. Sentencing Issues
 
 26
 Kamson and Adewusi challenge their sentences and restitution orders. We review de novo the district court's interpretation of the Sentencing Guidelines. United States v. Robinson, 94 F.3d 1325, 1327 (9th Cir.1996). We review for abuse of discretion the district court's application of the Sentencing Guidelines to the facts, and we review the findings of fact underlying the sentencing decision for clear error. Id. We review "for clear error the district court's factual finding that a defendant was an organizer or leader of criminal activity." United States v. Camper, 66 F.3d 229, 231 (9th Cir.1995). The question of "whether two prior offenses are related under [U.S.S.G.] § 4A1.2 is a mixed question of law and fact subject to de novo review by this court." United States v. Chapnick, 963 F.2d 224, 226 (9th Cir.1992). We review a restitution order for abuse of discretion, provided that it is within the bounds of the statutory framework. United States v. Pappadopoulos, 64 F.3d 522, 530 (9th Cir.1995).
 
 A. Enhancements for Amount of Loss
 
 27
 Appellants challenge the enhancements imposed on their base-level sentences for the amount of intended loss connected to the convictions. The district court enhanced Kamson's sentence thirteen levels, based on an intended loss of over two and a half million dollars. U.S.S.G. § 2F1.1(b)(1)(N). Adewusi's sentence was enhanced eleven levels, based on an intended loss of over eight hundred thousand dollars. U.S.S.G. § 2F1.1(b)(1)(L).
 
 
 28
 Appellants argue that the district court erroneously relied on hearsay to determine the total intended loss amount to apply to § 2F1.1(b)(1). We affirm the sentence because the district court found sufficient indicia of reliability to support the hearsay which the court used to calculate total intended loss.
 
 
 29
 The Sentencing Guidelines do not require a precise loss calculation. U.S.S.G. § 2F1.1 comment. n. 8. Moreover, a district court may rely on hearsay during sentencing. United States v. Williams, 41 F.3d 496, 499-500 (9th Cir.1994) ("A sentencing judge may consider hearsay evidence without running afoul of the Confrontation Clause, but the evidence must be reliable."). In the present case the hearsay declarants were bank employees and federal agents. The district court specifically found that these statements had sufficient indicia of reliability. We agree.
 
 
 30
 Kamson also challenges the use of the list of credit card numbers to arrive at the potential loss figure. Kamson argues that the Government made no showing that he attempted to use any of these numbers, or that it was possible for him to exploit the full credit of the credit accounts. This court, however, has recently held that there is nothing in the intended loss provisions of U.S.S.G. § 2F1.1 "that mandates the defendant be capable of inflicting the loss he intends." Robinson, 94 F.3d at 1328. The district court in the present case did not err by relying on the potential value of the credit card numbers on the seized list.
 
 
 31
 Adewusi also argues that the district court erred in adopting the presentence report's recommendation, which attributed a total loss figure to Adewusi resulting in an eleven-level increase. Adewusi contends that he was not sufficiently involved in the conspiracy to be penalized for losses attributed to the six thousand credit card numbers, and he argues that the Government failed to show that he was aware of the existence of the numbers, or knew of Kamson's plans to exploit the numbers.
 
 
 32
 This court has stated that "[u]nder the Guidelines, [a defendant] is responsible for the reasonably foreseeable conduct of his co-conspirators in furtherance of the execution of their jointly undertaken criminal activity." United States v. Lorenzo, 995 F.2d 1448, 1460 (9th Cir.), cert. denied, 510 U.S. 881 (1993). In the present case, the district court identified several factual bases from which it found that Adewusi could reasonably foresee the conduct of his co-conspirators. Adewusi was aware of the elaborate counterfeiting machinery used by Kamson, and it was reasonably foreseeable that this machinery would be used to produce more than the ten cards manufactured on the date of arrest. Adewusi was also involved in the publication of "New Age" magazines which were used by Kamson to ship counterfeit credit cards abroad.
 
 
 33
 In addition to the court's findings, there was testimony by Rosenthal that Adewusi assisted Kamson in the production and distribution of counterfeit cards. Moreover, Rosenthal and Adewusi discussed the relative ease of committing credit card fraud in other countries. Given these facts, it was not an abuse of discretion for the district court to find that Kamson's use of the credit card numbers was reasonably foreseeable.
 
 
 34
 B. Enhancement of Kamson's Sentence for Being a Leader or Manager, and for More-Than-Minimal Planning or a Scheme to Injure More than One Victim
 
 
 35
 Kamson appeals the two-level enhancement of his sentence under U.S.S.G. § 3B1.1 for being an organizer, leader, manager, or supervisor of criminal activity. The Government presented evidence that Kamson had been engaged in a long-running credit card conspiracy. Kamson possessed false identification cards, allegedly gave bills to Idris in exchange for credit card numbers, and gave bills to Adewusi that Sierze had given to Rosenthal. In light of this evidence, the district court did not commit "clear error [in its] factual finding that a defendant was an organizer or leader of criminal activity." Camper, 66 F.3d at 231.
 
 
 36
 Kamson also appeals the district court's two-level enhancement under U.S.S.G. § 2F1.1(2) for more than minimal planning or for a scheme to defraud more than one victim. The evidence demonstrates that Kamson had counterfeit equipment and supplies in both his luggage in a hotel room and in a storage locker. The evidence also suggests that the sheets that included over six thousand credit card numbers found in the seized luggage belonged to Kamson. Both the hotel room and the storage locker were rented under an alias used by Kamson, an alias that matched a counterfeit California identification license found in the luggage. This evidence indicates a criminal scheme that required extensive planning, and that had a goal of defrauding many different victims. The district court accordingly did not commit clear error in enhancing Kamson's sentence two levels for more than minimal planning or for Kamson's involvement in a scheme to defraud more than one victim.
 
 
 37
 C. Enhancement of Kamson's Sentence for Obstruction of Justice
 
 
 38
 Kamson contests the two level enhancement of his sentence for willful obstruction of justice under U.S.S.G. § 3C1.1. Kamson correctly argues that the district court erred when it enhanced his sentence for obstruction of justice without making findings that he willfully gave false testimony on a material matter. In United States v. Robinson, 63 F.3d 889 (9th Cir.1995), this court noted that, on remand, the district court should make more complete and specific findings supporting a two-level enhancement for obstruction of justice than were made initially. Id. at 891-92. This court stated:
 
 
 39
 The [district] court must find that [the defendant] gave (1) false testimony, (2) on a material matter, (3) with willful intent. Although the court need not specifically address each of these elements, its findings must encompass all of the factual predicates for a finding of perjury.
 
 
 40
 Id. at 892 (internal quotations and citations omitted).
 
 
 41
 In the present case, the district court did not find that Kamson gave false testimony on a material matter with willful intent. We therefore vacate Kamson's sentence and remand for the district court to either make specific findings on the obstruction of justice enhancement or remove the enhancement from Kamson's sentence.
 
 D. Two-level Sentence Reduction for Adewusi
 
 42
 Adewusi argues that he was entitled to a two-level downward adjustment under U.S.S.G. § 3B1.2 for being a minor participant in the offense. "A downward adjustment under § 3B1.2 is to be used infrequently and only in exceptional circumstances." United States v. Taren-Palma, 997 F.2d 525, 535 (9th Cir.1993), cert. denied, 511 U.S. 1071 (1994). Adewusi "has the burden of proving that he was a minor participant by a preponderance of the evidence." Id.
 
 
 43
 Adewusi did not show by a preponderance of the evidence that he was a minor participant. The district court noted the elaborate machinery used by Kamson and found that Adewusi knew that these machines would be used to produce more than a few credit cards. The court also noted the use of the "New Age" magazines to mail counterfeit credit cards to international addresses. The court admitted that Adewusi was a "lesser player" than Kamson but found Adewusi's "conduct was such that it does cause great concern."
 
 
 44
 In addition to the district court's findings, there was undisputed evidence that Kamson was arrested with $400 of "marked" bills, given by Sierze to Rosenthal, and Rosenthal to Kamson. Given this evidence, the district court did not commit clear error in finding that Adewusi was not entitled to the two-level sentence reduction.
 
 
 45
 E. Adewusi's Prior Convictions for Spousal Battery
 
 
 46
 Adewusi appeals the district court's reliance on the probation officer's report, which calculated four criminal history points for Adewusi's misdemeanor and felony spousal battery. Adewusi argues that these two charges should not have been considered separately.
 
 
 47
 Commentary Note 3 of U.S.S.G. § 4A1.2 states, "Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense.)" Adewusi attacked and verbally abused his wife on December 5, 1991, and was arrested. On December 27, 1991, Adewusi assaulted his estranged wife again. Because these two incidents were separated by an intervening arrest, the district court correctly considered them as separate offenses in calculating Adewusi's criminal history.
 
 
 48
 F. Adewusi's Claim for Downward Departure Because of Convergence of the Factors Related Waived
 
 
 49
 Adewusi argues on appeal that he was entitled to a downward departure because of a "convergence of the factors related." Because Adewusi did not make this argument before the district court, we deem it waived. United States v. Quesada, 972 F.2d 281, 283-84 (9th Cir.1992), cert. denied, 507 U.S. 944 (1993).
 
 
 50
 G. Restitution Orders.
 
 
 51
 Kamson appeals his restitution order of $100,000 and Adewusi appeals his restitution order of $15,000, both of which were imposed under 18 U.S.C. § 3663.
 
 
 52
 In 1990, Congress amended this statute and broadened the permissible scope of restitution orders. This court recently interpreted the amended statute: "[I]f someone is convicted of a conspiracy, the court can order restitution for damage resulting from any conduct that was part of the conspiracy and not just from specific conduct that met the overt act requirement of the conspiracy conviction." United States v. Reed, 80 F.3d 1419, 1423 (9th Cir.), cert. denied, 117 S.Ct. 211 (1996). The total actual loss from fraudulent purchases was calculated by the victim banks at $610,462. This actual loss was computed from credit card numbers found among the luggage seized by Sierze, and this loss can fairly be said to be "resulting from any conduct that was part of the conspiracy." Id. There is therefore sufficient evidence to uphold the restitution orders against both Kamson and Adewusi.
 
 
 53
 Adewusi also challenges the restitution order because it was duplicative. The total restitution orders, however, totalled roughly one-sixth of the computed actual loss. The district court presumably prorated the partial restitution orders among the victims. Therefore, because each victim is actually recovering a small portion of the total actual loss, the district court did not abuse its discretion in its partial restitution orders.
 
 
 54
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 55
 U.S. v. Adewuis-Kamson, Nos. 95-50504, 95-50507
 
 
 56
 REINHARDT, Circuit Judge, concurring and dissenting:
 
 
 57
 I concur with respect to Kamson but dissent with respect to Adewusi. I would reverse Adewusi's conviction on the ground of insufficient evidence.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3