129 F.3d 128
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joann BAGGETT, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Curtis BURNEY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Victoria HAYES, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mark GRZESCZUK, Defendant-Appellant.
 Nos. 96-50492, 96-50515, 96-50494, 96-50495.
 United States Court of Appeals, Ninth Circuit.
 Sept. 29, 1997.
 
 1
 Appeal from the United States District Court for the Southern District of California William B. Enright, District Judge, Presiding.
 
 
 2
 Before: HALL and T.G. NELSON, Circuit Judges; and WINMILL, District Judge.**
 
 
 3
 MEMORANDUM*
 
 
 4
 Defendants-appellants Joann Baggett, Curtis Burney, Victoria Hayes, and Mark Grzesczuk were convicted of multiple counts of aiding and abetting wire fraud. 18 U.S.C. §§ 1343, 2. They worked as telemarketers for a fraudulent telemarketing operation in Las Vegas, Nevada, called "Say No Now, Inc." ("SNN"). Baggett and Grzesczuk appeal their convictions and sentences. Burney and Hayes appeal their sentences. For the reasons discussed below, we affirm is to all issues but the restitution order, which is discussed in the published opinion filed concurrently with this unpublished memorandum disposition.
 
 I.
 
 5
 Appellants contend that the district court erred when it imposed a fine of $25,000 on Baggett, Burney, and Grzesczuk, and a fine of $20,000 on Hayes, because they are unable to pay those amounts. Since appellants failed to object below that they could not pay the fine due to indigency, review in this case is confined to plain error. See United States v. Olano, 507 U.S. 725, 732-34 (1993).
 
 A. Court's Findings on the Record
 
 6
 Appellants argue that the district court failed to make any findings as to their ability to pay a fine under 18 U.S.C. § 3572 and Sentencing Guideline § 5E1.2. Those two provisions require the district court to "consider" various:factors before imposing a fine. The court need not make an express finding of fact. United States v. Quan-Guerra, 929 F.2d 1425, 1426 (9th Cir.1991). However, when affirming fines, the Ninth Circuit has consistently emphasized that the district court at least recognized it had to consider the defendant's current and future ability to pay a fine. Id.; see also United States v. Robinson, 20 F.3d 1030, 1033 (9th Cir.1994); but see United States v. Marquez, 941 F.2d 60, 65 (2d Cir.1991) (district court must only "consider" relevant factors; there does not exist a "separate requirement that this consideration be articulated").
 
 
 7
 Here, the district court made no specific indication on the record that it considered appellants' current or future ability to pay a fine. But the court did state on the record that it reviewed appellants' presentence reports, and those reports contained detailed information pertinent to determining whether appellants could pay the fine. This reference constituted sufficient evidence that the court considered appellants' ability to pay before ordering the fines, particularly since the court was not encouraged through an objection to discuss the issue on the record. See United States v. Cannizzaro, 871 F.2d 809, 811-12 (9th Cir.1989) (court's consideration of presentence report sufficient evidence that it considered defendants' ability to pay restitution). The court did not commit plain error.
 
 B. Imposition of Fines
 
 8
 Second, appellants contend that the district court erred because the record demonstrates that they cannot pay the fines imposed. A defendant must prove that he cannot pay a fine by a preponderance of the evidence. United States v. Rafferty, 911 F.2d 227, 232 (9th Cir.1990). As a result, "where the record does not: show that the defendant cannot pay a fine or that he is 'not likely' to be able to pay a fine, and there is evidence supporting the contrary conclusion, the court may impose a fine within the Guideline range." United States v. Ortland, 109 F.3d 539, 549 (9th Cir.1997). Moreover, a court has the discretion to fine a presently indigent defendant if it determines that the defendant has the earning capacity to pay the fine in the future. Id. (quoting United States v. Haggard, 41 F.3d 1320, 1329 (9th Cir.1997)).
 
 
 9
 The district court did not commit plain error by implicitly finding that appellants have the earning capacity to pay their fines in the future. The record indicates that although it would be quite difficult for appellants to pay the fines in the future, it would not be impossible.
 
 II.
 
 10
 Appellants Baggett and Grzesczuk argue that the court erred when it declined, without an evidentiary hearing, to order the government to grant use immunity to two defense witnesses. Those witnesses had not yet been indicted, and they notified the court that they intended to invoke their Fifth Amendment privilege against self-incrimination.
 
 
 11
 Criminal defendants are not usually entitled to compel the government to grant a witness immunity. "In order to fall under an exception to this rule, [appellants] must show that: (1) the testimony was relevant; and (2) the government distorted the judicial fact-finding process by denying immunity." United States v. Young, 86 F.3d 944, 947 (9th Cir.1996) (citing United States v. Westerdahl, 945 F.2d 1083, 1086 (9th Cir.1991)).
 
 
 12
 Here, the testimony of SNN employee Rudy Montano and SNN owner Phillip Levine about what the SNN telemarketers knew about SNN's operations may well have been relevant to support appellants' defense that they believed SNN was a charitable organization that sent valuable awards to donors. However, appellants have failed to show that the fact-finding process was distorted or that the government intentionally attempted to distort it. Montano's and Levine's anticipated testimony was cumulative to the testimony of several other witnesses. See Westerdahl, 945 F.2d at 1086. Grzesczuk complains that the government deliberately indicted the salespeople first in order to prevent them from introducing Montano's and Levine's testimony, but there is no proof to support his claim. In any criminal case involving more than one person, someone has to be indicted first. The district court did not err when it refused to order the government to grant the two witnesses use immunity.
 
 III.
 
 13
 Appellant Grzesczuk contends that the district court made a number of erroneous evidentiary rulings during trial.
 
 
 14
 A. Evidence of Grzesczuk's Other Employment in Telemarketing
 
 
 15
 Appellant Grzesczuk argues that the court should not have admitted evidence that Grzesczuk had worked in telemarketing both before and after his employment at SNN. While Grzesczuk does not cite the testimony to which he objects, presumably it is the testimony of Appellant Baggett, who stated that she had worked with Grzesczuk at "Missing Children" and "U.S. Publishing."
 
 
 16
 This evidence was admissible under Federal Rule of Evidence ("FRE") 404(b) to show Grzesczuk's knowledge, intent, and lack of mistake. Evidence admitted under Rule 404(b) must: "(1) be based on sufficient evidence; (2) be not too remote in time from charged crimes; (3) bear some similarity to charged acts; and (4) prove an essential element of the charged offense." United States v. Melvin, 91 F.3d 1218, 1222 (9th Cir.1996) (citations omitted).
 
 
 17
 First, sufficient evidence supported the admission of Appellant Baggett's testimony, since it resulted from her personal knowledge. Baggett had worked with Grzesczuk at both telemarketing companies. Second, Grzesczuk's work at the companies was not overly remote in time. Baggett testified that she worked briefly at Missing Children immediately before working at SNN, and that she worked at U.S. Publishing for a short period of time immediately after working at SNN, thus indicating that Grzesczuk's employment at the two companies was close in time to his employment at SNN. Third, Grzesczuk's employment at Missing Children and U.S. Publishing was substantially similar to his work at SNN. All three were telemarketing companies which encouraged people to send money in exchange for a prize. Finally, Baggett's testimony helped prove intent, an essential element of the crime. It showed that Grzesczuk had a good deal of experience with telemarketing companies, and thus that he was more likely than a novice to know that the representations he made to victims while working at SNN were false.
 
 
 18
 Grzesczuk contends that the prejudicial effect of the evidence outweighed its probative value. His argument is unpersuasive. The evidence was probative of his intent, knowledge, and lack of mistake. It was not unduly prejudicial, since it simply concerned Grzesczuk's previous work experience in telemarketing.
 
 
 19
 B. Testimony of Victims Other Than Those Named in the Indictment
 
 
 20
 Appellant Grzesczuk challenges the admission of testimony from Arnold Schultz and Ziddie Kennedy, who were victims not named in the indictment. Schultz and Kennedy testified that Grzesczuk solicited donations from them and that they were unhappy with the awards they received.
 
 
 21
 Evidence is considered proof of the charged crime, rather than proof of "other crimes," when it is inextricably intertwined with evidence concerning the charged crime. United States v. Mundi, 892 F.2d 817, 820 (9th Cir.1989) (citing United States v. Soliman, 813 F.2d 277, 278 (9th Cir.1987)). In Mundi, the defendant had been convicted of fraud for devising a scheme involving eleven travel agencies. We determined that testimony which described the involvement of several travel agencies not named in the indictment was fully admissible as evidence of the same crime. 813 F.2d at 278.
 
 
 22
 Here, Schultz and Kennedy were victimized by the same individual and in the same manner as victims named in the indictment. While each solicitation that Grzesczuk made was its own wrongful act, all the solicitations were "inextricably intertwined" as part of the same fraudulent scheme at SNN. In addition, the indictment clearly considers all of Grzesczuk's telephone solicitations to be part of the charged crime. See Mundi, 392 F.2d at 820. Schultz's and Kennedy's testimony was therefore admissible as proof of the charged crime.
 
 
 23
 C. Evidence that Grzesczuk Sold Leads to SNN After He Quit Working for SNN
 
 
 24
 Appellant Grzesczuk contends that the district court erred when it allowed the government to introduce into evidence a check indicating that he had sold leads to SNN after his employment at SNN had ended. "Leads" are names of individuals who have responded positively to previous solicitations. The chronology of the testimony indicates that Grzesczuk's attorney invited the admission of the check by eliciting testimony about it. Even if that were not the case, the testimony was admissible to show Grzesczuk's participation in the SNN scheme, and his knowledge that the scheme relied in large part upon duping people who had proven susceptible to telephone solicitations. See FRE 404(b).
 
 IV.
 
 25
 Grzesczuk argues that the evidence was insufficient to support his conviction, and he appeals the denial of his motion for a new trial. According to Grzesczuk, the government failed to prove beyond a reasonable doubt that he intentionally and knowingly defrauded his victims. He contends the government did not prove either that he knew the donations he solicited were not benefitting any charitable cause, or that he knew the "awards" the donors were to receive were of little value. Grzesczuk points to the fact: that he had only worked at SNN for two weeks, that incoming salespeople were told that SNN was a charitable organization, and that he used a "mystery pitch" that did not promise donors a specific award.
 
 
 26
 The circumstantial evidence reveals that Grzesczuk knowingly and intentionally defrauded his victims. In the two weeks that Grzesczuk was employed at SNN, he generated over $15,000 in donations. His average donation was twice as large as the averages of other salespeople. In addition, Grzesczuk's "pitch" revealed that not only was he extremely clever at soliciting money, but that he readily and knowingly told his victims lies in order to induce them to give donations. Among other things, Grzesczuk told his victims that: he was responsible for disbursing a "priority one, level one award"; that the donation sent would offset the fee of providing the award; that only two or three people a year achieved what the victim had achieved; that if he told the victim what the award was, the victim would send far more than Grzesczuk had requested; that the victims' money would help children involved in drugs and alcohol; that SNN was legally obligated to provide one of the biggest and best awards ever; and that maybe a handful of people each year were selected to be in this sort of position.
 
 
 27
 These statements were more than mere "puffery" or statements of opinion, as Grzesczuk seeks to characterize them; they were knowingly false statements of fact. See United States v. Gay, 967 F.2d 322, 328 (9th Cir.1992). Grzesczuk's false statements, as well as the evidence of Grzesczuk's previous telemarketing experience, circumstantially demonstrate that Grzesczuk knew that SNN was not a legitimate operation. Any rational trier of fact could have found the essential element of intent beyond a reasonable doubt. See United States v. Riggins, 40 F.3d 1055, 1057 (9th Cir.1994) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 V.
 
 28
 Finally, Grzesczuk challenges several other aspects of his sentence.
 
 
 29
 A. Sentence Enhancement for Vulnerability of Victims
 
 
 30
 Grzesczuk appeals the district court's decision to adjust his offense level upward by two points because of the vulnerability of the victims. Under Sentencing Guideline § 3A1.1(b), a defendant is eligible for a two-level increase "[i]f the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, ... or ... a victim was otherwise particularly susceptible to the criminal conduct[.]" U.S.S.G. § 3A1.1(b).
 
 
 31
 The government argued that the victims were particularly vulnerable due to their age, and the court apparently imposed the two-level increase under 3A1.1(b) on that basis. Grzesczuk contends that such an increase was inappropriate because he did not choose the people he called, and no evidence indicated the leads he received were limited to elderly people. Grzesczuk cites comment three to Section 3A1.1(b), which states that subsection (b) "does not apply in a case where the defendant sold fraudulent securities by mail to the general public and one of the victims happened to be senile." U.S.S.G. § 3A1.1, comment (n. 2).
 
 
 32
 The government concedes that SNN did not choose its victims exclusively due to their age. Nonetheless, the evidence admitted at trial strongly suggested that SNN and appellants victimized a disproportionate number of elderly people. The ten victims who testified at trial ranged in age from 58 to 90 years of age, with most over 70 years old. In addition, a trial exhibit showed that SNN deliberately purchased leads of individuals over the age of 60. This evidence is sufficient to show the district court did not clearly err by finding an upward adjustment was merited due to the vulnerability of the victims.
 
 
 33
 B. Sentence Enhancement for Charitable Misrepresentations
 
 
 34
 Grzesczuk also appeals the district court's decision to apply a two-level upward adjustment for falsely representing that SNN was a charitable organization. Under Sentencing Guideline § 2F1.1, a defendant is eligible for the enhancement "[i]f the offense involved ... a misrepresentation that the defendant was acting on behalf of a charitable ... organization." U.S.S.G. § 2F1.1(b)(3). The Background Note explains:
 
 
 35
 Use of false pretenses involving charitable causes ... enhances the sentences of defendants who take advantage of victims' ... generosity and charitable motives ... [D]efendants who exploit victims' charitable impulses create particular social harm.
 
 
 36
 U.S.S.G. § 2F1.1, comment. (Background Note).
 
 
 37
 Tape-recordings of Grzesczuk's conversation with Agent Roberts, posing as a victim, revealed that Grzesczuk described SNN as a nonprofit foundation whose donations went directly to helping children involved in drugs and alcohol. Evidence in the record demonstrates that Grzesczuk knowingly told a number of other lies in order to flesh out his claim that SNN was a charitable organization. These intentional misrepresentations, as well as Grzesczuk's experience as a telemarketer, add up to sufficient circumstantial evidence that Grzesczuk knew SNN was not a charitable organization. The district court did not clearly err when it found that Grzesczuk merited this upward adjustment.
 
 
 38
 C. The District Court's Refusal to Depart Downward
 
 
 39
 Finally, Grzesczuk argues that the district court erred when it declined to depart downward under Sentencing Guideline § 4A1.3. A district court's discretionary refusal to grant a downward departure cannot be reviewed on appeal. Sablan, 92 F.3d 865, 870 (9th Cir.1996); United States v. Eyler, 67 F.3d 1386, 1390 n. 5 (9th Cir.1995). However, if the sentencing court indicated that it lacked the discretion to depart, that ruling is reviewed de novo. United States v. Brownstein, 79 F.3d 121, 122 (9th Cir.1996).
 
 
 40
 The court's determination that a downward departure would be "inappropriate" indicates that the court knew it had the discretion to depart but chose not to do so. That decision is unreviewable.
 
 CONCLUSION
 
 41
 The district court did not err when it imposed the fines. Its refusal to compel the government to grant immunity to two defense witnesses also did not amount to error. We reject Grzesczuk's claims that the district court made erroneous evidentiary rulings, that the evidence was insufficient to support his conviction, and that the district court erred at sentencing when it enhanced his sentence and when it refused to depart downward under the guidelines. We therefore AFFIRM as to these issues.
 
 
 42
 As explained in the published opinion filed concurrently with this unpublished memorandum disposition, we REVERSE and REMAND as to the restitution orders.
 
 
 
 **
 Hon. B. Lynn Winmill, United States District Judge for the District of Idaho, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3